**KILPATRICK v. FEDERAL MUT. INS. CO.**

No. 5505.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

Rehearing Denied Jan. 28, 1938.

Writ of Certiorari and Review Denied March 7, 1938.

A. V. Hundley, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

HAMITER, Judge.

Two insurance certificates dated November 24, 1933, each providing a maximum death benefit of $500, were issued by defendant, as the Federal Mutual Assurance Association, on the life of Dr. Ralph Kilpatrick. Mrs. Alice P. Kilpatrick, the wife of said insured, was named beneficiary therein. In lieu of the two policies just described which were surrendered, defendant, under the name of Federal Mutual Insurance Company, issued on August 7, 1935, a single policy stipulating a maximum death benefit of $1,000, and also that the insurer would pay "20% of the dues paid by him (insured) if his death occurs more than two years and within three years after the date of this certificate or the last reinstatement."

The insured died on May 14, 1936, and thereafter his beneficiary instituted this suit on the last above mentioned policy. She seeks judgment against defendant for the full death benefit and also 20 per cent. of the dues paid by the decedent.

Defendant first excepted to the suit as being premature. After a separate hearing, this exception was overruled.

The answer contained a general denial of liability and several special defenses which we shall hereinafter discuss.

There was judgment in plaintiff's favor as prayed for, and defendant appealed.

The plea of prematurity is urged in this court. It is thereunder contended that the submission of the claim to arbitration, in accordance with the provisions of the policy, is a condition precedent to the filing of suit; and, as plaintiff has failed in this regard, after being requested to do so, her suit is premature. The provision relied on by defendant is section 11, which reads as follows:

"Arbitration. Should the parties hereto, their heirs, assigns, legatees or the beneficiary at any time fail to agree upon their rights under this policy, the company shall have the right, at its option, to have the matter arbitrated, and if it so elects, it shall so notify the other interested parties herein, who shall appoint an arbitrator, then the company will appoint a second one, the two so appointed shall select a third one

if necessary. The decision of a majority of the arbitrators made in writing to the parties hereto shall be binding and conclusive on them. The member or other interested party shall pay the expense, if any, of the arbitrator appointed by him, and the company will pay the expenses, if any, of the other two."

When consideration is also given to the other provisions of the insurance contract, it is evident that the clause just quoted relates to the payment of disability benefits and has no application to death claims.

For instance, it is provided in the second paragraph of section 6 that:

"The member named herein on becoming totally and permanently disabled as provided in the above paragraph of this section, may make application to the Home Office of the company in writing, setting forth the conditions of the disability, and within sixty days thereafter the merits of the claim will be arbitrated in the manner provided for arbitration in this policy. If it is the opinion of the Arbitration Committee that such member is totally and permanently disabled, as defined in this policy, the company will, within ninety days after such report by Arbitration Committee is filed at the Home Office of the company, begin the payments in cash as hereinbelow provided. No member shall be eligible for disability benefits as provided for in this policy if such disability is caused from any condition contracted prior to the date of the policy."

In the second paragraph of section 12 we find:

"No action at law or in equity shall be brought on this policy for disability benefits until ninety days after the filing at the Home Office of the company of the report of the Arbitration Committee provided herein, if one has been appointed, or until ninety days after proof of disability has been filed with the Home Office, if no Arbitration Committee has been appointed, and no action whatever shall be brought for the disability benefits provided herein unless it is within one year from the beginning of total disability."

With reference to the payment of death claims, the policy stipulates in section 1 as follows:

"Death Benefits. That within ninety days after receipt by the company of satisfactory proof of the death of the member named herein while this policy is in benefit as herein defined, the company shall pay to the beneficiary named herein, if living, otherwise to the heirs or legatees of said member, one of the following amounts."

Again in the first paragraph of section 12 it is said:

"No action at law or in equity shall be brought on this policy for death benefits prior to the expiration of ninety days after due and satisfactory proof of death of the member named herein has been filed with the home office of this company in Shreveport, Louisiana, and no action whatever for death benefits shall be brought unless within one year from the date of death of the member."

It is thus to be seen from the quoted extracts that the policy provisions contemplate the arbitration of disability claims, while there is stipulated an unconditional promise to pay death benefits within ninety days after the appropriate filing of satisfactory proof of death. In this connection, it might be observed that a death claim requires no arbitration; but there are many questions and elements in a claim for disability that may be arbitrated.

The fact that section 11, above quoted, refers to "heirs, assigns, legatees or beneficiaries" in reference to the matter of arbitration does not necessarily mean that death claims are made the subjects of arbitration thereunder. As pointed out in brief of plaintiff's counsel, it is not impossible for a beneficiary or heir to succeed, in some cases, to disability benefits which accrued and were due to a deceased insured prior to his demise.

In our opinion, therefore, the plea of prematurity was properly overruled.

One of the defenses sought to be made on the merits of the case was that the issuance of the policy was fraudulently secured on misrepresentations of the assured as to the state of his health at the time of the application. However, it is admitted in the brief of defense counsel that this defense was not maintained, and we shall consider it as having been abandoned.

Defendant seriously urges that, because of an alleged suspension and subsequent reinstatement of the original contracts occurring during the year 1935, plaintiff is entitled under the death benefit schedule of section 1 of the policy to the payment of only $400. This schedule reads as follows:

"If the member dies within three months after the date of this policy, or the last reinstatement thereof, the company will refund all money that has been paid on this

policy since its date or the last reinstatement, plus ten per cent of said sum.

"If the member dies over three months after the date of this policy, or the last reinstatement thereof, and within nine months thereof, the company will pay $200.00 (20% of the policy).

"If the member dies over nine months after the date of this policy, or the last reinstatement, and within fifteen months thereof, the company will pay $400.00, (40% of the face of the policy).

"If the member dies over fifteen months after the date of this policy or the last reinstatement thereof, the company will pay $1000.00 (100% of the face of the policy), hereinafter called the full death benefit."

Provision 9 of the original policy states:

"Should said member fail or refuse to pay the semiannual dues of $1.50 each, or the death benefit calls of $1.25 each, within fifteen days after notice thereof shall have been duly mailed by the association to the last address of said member, as shown by the records of the association at its home office, this certificate shall automatically lapse; that is, become null and void, and all payments to the association theretofore made on account hereof shall remain the property of the association."

While the original contracts were in existence an assessment notice was mailed to the insured under date of February 25, 1935. The assessment levied was not paid by him until March 18, 1935, or more than fifteen days but less than thirty days after the mailing of the notice. Under the provisions last above quoted from the original contracts, there was an automatic lapse and reinstatement of the insurance. However, the policy herein sued on was issued in lieu and instead of the original contracts, and it specifically recites that "benefits under this policy will be computed as if it were dated November 24, 1933, and payments made by the member named herein to the Federal Mutual Assurance Association, *shall be considered as paid on this policy, in computing benefits thereunder.*" Furthermore, the insurance under the last issued policy does not lapse for nonpayment of an assessment, as is disclosed by its terms and by the testimony of a defense witness, until the expiration of a thirty-day period following the mailing of the assessment notice.

When the payment made by insured on March 18, 1935, is considered as having been paid on the last issued policy, or the one on which this suit is based, as stipulated in the above-quoted and italicized provision, the conclusion must be reached that there was no lapse and subsequent reinstatement of the insurance; for the thirty-day grace period permitted by the policy did not expire between the date of mailing of notice and that of payment of the assessment. Consequently, computation of death benefits must be made from November 24, 1933, the effective date of the contract; and, as the insured died more than fifteen months after that date, the beneficiary is entitled to the full death benefits, or $1,000, and in addition thereto 20 per cent. of the dues paid by the insured.

No error is apparent in the trial court's judgment, and it is affirmed, with costs.